IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2017

**JERRY FINIS LAYNE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Grundy County**
**No. 5169     Justin C. Angel, Judge**

_____

**No. M2017-00421-CCA-R3-PC**
_____

The Petitioner, Jerry Finis Layne, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of counsel and that his guilty plea was unknowingly and involuntarily entered.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

B. Jeffery Harmon, District Public Defender; and Robert G. Morgan, Assistant Public Defender, for the appellant, Jerry Finis Layne.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James Michael Taylor, District Attorney General; and David L. Shinn, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Petitioner was indicted for two counts of aggravated assault and one count of aggravated kidnapping.  On September 22, 2014, he pled guilty to one count of aggravated assault in exchange for a ten-year-sentence and dismissal of the other charges.

The State recited the following factual basis for the plea at the guilty plea hearing as follows:

Testimony from Jody Dykes and Jody Kinnery would be that on April 7, 2013, the [Petitioner] and Mr. Dykes and Ms. Kinnery, along with some other individuals were at Ms. Kinnery's residence in the Daus Mountain area of Grundy County. Mr. Dykes and Ms. Kinnery's testimony would be that the [Petitioner] became upset with Jody Dykes based upon some allegations the [Petitioner] made against Mr. Dykes. The [Petitioner] picked up a baseball bat and was threatening to kill Mr. Dykes. Came at him, took a swing at him. Mr. Dykes would testify that he swung towards his head. The only thing that saved him, Mr. Dykes would testify, he raised his arm and was struck on his elbow. There was a knot that came up on his elbow and some bruising. Mr. Dykes was separated from the [Petitioner].

At some time later that day the [Petitioner] got Ms. Kinnery to take him looking for a gun. Ms. Kinnery would state that the [Petitioner] was continuing to threaten to kill Mr. Dykes. Could not obtain a gun. They went back to Ms. Kinnery's residence and the [Petitioner] picked up a knife and started chasing through the house looking for Mr. Dykes, threatened to kill Mr. Dykes and while the [Petitioner] was looking through the house for Mr. Dykes, the testimony from the witness would be that Mr. Dykes kind of slipped off and fled from the residence.

The [Petitioner] was later arrested. Jon Bell would testify that the knives that the [Petitioner] had in his possession were found thrown out in the yard of the area of the home of Ms. Kinnery.

The trial court reviewed the Petitioner's rights with him and inquired whether he understood those rights and was satisfied with counsel. The Petitioner testified that he understood the terms of his plea and had no questions for counsel regarding the plea.

The State made the following announcement before the trial court accepted the plea:

[T]here is another . . . aggravated assault case pending here in Marion County and we will be entering a nolle [prosequi] on that as part of this agreement. We will not do that today. We'll do that sometime in the future. I think it's actually set in November. The [Petitioner] has expressed a desire not to go back to the Grundy County jail and be able to remain here or Sequatchie or Bledsoe County and so we're going to leave that case open so he can stay here until – the jail administrator that I spoke to on Friday said she would try to arrange some way for him to be

transferred to Sequatchie or Bledsoe [County] once he becomes a state prisoner.

The Petitioner filed a timely pro se petition for post-conviction relief on September 10, 2015, and appointed counsel filed an amended petition on June 6, 2016. In his petition, the Petitioner alleged that his guilty plea was not knowingly entered because he misunderstood the terms of his plea; specifically, he believed that he would serve his sentence "in a local county jail where he could receive maximum sentence reduction credits." He further alleged that "his misunderstanding of the plea terms was due, in part, to ineffective assistance of counsel."

The post-conviction court conducted an evidentiary hearing on January 25, 2017. At the hearing, the Petitioner admitted that he had thirteen prior felony convictions involving acts of dishonesty. He said that he had appeared before a judge and entered guilty pleas those thirteen times, as well as on other occasions for a number of misdemeanors. Accordingly, he was familiar with the criminal justice system and the guilty plea procedure. The Petitioner admitted that he told the State's investigator that he hit the victim with a baseball bat, albeit in self-defense, but denied kidnapping anyone.

The Petitioner said that he spoke with counsel three or four times to discuss his case and any plea offers. He understood that he faced a minimum thirty-year-sentence on the aggravated kidnapping charge and fifteen years on the aggravated assault charges and that all the sentences would run consecutively. The Petitioner said that he and counsel had several discussions about his desire to be housed locally in a county jail, elaborating that he wanted to serve his sentence in a county jail because those jails were more generous with sentence reduction credits than the Department of Correction. The Petitioner recalled that counsel met with him the Friday before the scheduled Monday hearing date, and counsel told him that the prosecutor "ha[d] talked with the jail administrator and all this is going to happen if [he] t[ook] this plea." However, he acknowledged that county jails were not required to give sentence reduction credits, nor did counsel promise him that county jail sentence reduction credits were guaranteed.

The Petitioner maintained that he "agreed to 10 years to be served in the Bledsoe County jail or the Sequatchie County jail," and he believed at the time he entered his plea that he would be transferred to one of those jails. He said that he was never informed that he might not be incarcerated locally, but he acknowledged that nothing in his guilty plea paperwork or on the judgment indicated that he would serve his sentence anywhere other than the Department of Correction. The Petitioner recalled, however, that it was announced during the plea hearing that "everything is suppose[d] to be in order" and that the Petitioner would "stay in Marion County until we can order a transfer to Bledsoe or Sequatchie County."

- 3 -

The Petitioner acknowledged that he told the court during the plea hearing that he was satisfied with counsel's performance, which he claimed was true at the time. He said that had the trial court, the prosecutor, or counsel stated on the record at the plea hearing that he was not guaranteed where he would serve his sentence, he would not have accepted the plea offer and, instead, would have gone to trial. However, he also acknowledged that when the trial court asked him if he had been promised anything other than the plea offer, he answered no.

The Petitioner testified that, when he learned that he would not be housed in a county jail, he wrote a letter to counsel expressing his desire to withdraw his guilty plea. Counsel visited him and advised against withdrawing his plea. He claimed that counsel told him, "[I]t's going to happen[]. We've talked with them. The next day or so you'll be transferred."

Counsel testified that she had many meetings with the Petitioner and recommended that he accept the State's ten-year offer based on his record and the facts of the case. She recalled that the Petitioner was agreeable with a ten-year sentence given his potential exposure. Counsel stated that the Petitioner expressed his desire to serve his sentence in a county jail and that was a central point of their discussions.

Before the plea, the prosecutor informed counsel that he had spoken with the jail administrator about transferring the Petitioner to a county jail, and the jail administrator indicated that he "would do what . . . he could[] to have [the Petitioner] transferred to one of the local jails." However, counsel confirmed that there was no provision in the plea petition or the judgment indicating that the Petitioner would serve his sentence in a county jail. Counsel was not concerned that the plea did not include such provision because there was "no guarantee that the transfer would take place" as part of the offer, and she explained that to the Petitioner. She told the Petitioner that neither she nor the prosecutor could promise that he would serve his sentence in a county jail. Counsel did not believe that the Petitioner was confused about where he would be incarcerated, elaborating that he "understood perfectly."

Counsel said that in hindsight, she could not say that she would have done anything differently at the plea hearing. Counsel recalled that she was contacted by the Board of Professional Responsibility about a complaint filed by the Petitioner and that her response to the Petitioner's complaint included the following statement, "'If you recall, when you agreed to enter your plea, I explained to you that I could not promise that the transfer would take place.'"

Counsel testified that sometime after the plea hearing, the Petitioner contacted her about withdrawing his plea because he had not been transferred. She discussed a motion to withdraw with the Petitioner and left the decision up to him as to whether a motion should be filed. She called the jail administrators in Marion County, Sequatchie County, and Bledsoe County to try to get the Petitioner transferred. She called so often that one of the county jails stopped returning her calls. She asked the Petitioner whether he wanted her to file a motion to withdraw the plea or continue working on trying to get him transferred, and the Petitioner replied that he wanted her to continue working on a transfer.

At the conclusion of the hearing, the post-conviction court made oral findings, which were incorporated later into a written order, denying the petition. The court found that the Petitioner desired to be housed in a county jail rather than the Department of Correction and that counsel went "above and beyond what is normal representation" trying to effectuate that desire. The court noted, however, that counsel explained to the Petitioner before he entered the plea that there was no guarantee he would be housed locally. The court noted that the judgment, signed by the Petitioner, indicated that service of the sentence was in the "TDOC" and that there was no additional provision indicating that the Petitioner would be incarcerated locally or in a county jail. The court likewise found that there was no such provision in the plea petition, which was also signed by the Petitioner. The court recalled that the Petitioner affirmed at the plea hearing that he understood the proposed sentence. The court concluded that the Petitioner's plea was knowingly and voluntarily entered and that there was no deficiency in counsel's performance.

## ANALYSIS

The Petitioner argues that his plea was unknowingly and involuntarily entered, partly due to ineffectiveness of counsel. He asserts that he misunderstood the terms of his plea and that "his ignorance and incomprehension" were compounded due to comments made by the prosecutor at the plea hearing. He further asserts that counsel's failure to state on the record at the plea hearing "that there was no promise that he would serve his sentence in a local jail was ineffective."

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial

court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either

deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

In denying the petition, the post-conviction court found:

There is no proof in the record as a whole of any promise, either explicit or implied, made to the Petitioner stating his ten-year sentence would be served in a local jail.

[Counsel]'s not placing on the record during the plea colloquy [that] there was no promise or guarantee the Petitioner's sentence would be served in a local jail was not ineffective and this did not prejudice the Petitioner.

[Counsel's] overall representation of the Petitioner was not ineffective and her performance did not prejudice the Petitioner.

The record shows that the Petitioner was quite familiar with guilty plea proceedings, having thirteen prior felony convictions, all of which resulted from guilty pleas. By his own admission, the Petitioner was very acquainted with the criminal justice

system and the procedure for entering pleas. The Petitioner admitted that he was guilty of assaulting the victim and risked a far greater sentence if convicted at trial. The Petitioner had many opportunities to discuss his case and the State's offer before entering his plea and was advised by the trial court of the ramifications of waiving a trial and entering a plea. Counsel was clear in her testimony, which the post-conviction court accredited, that she informed the Petitioner before entering his plea that service in a county jail could not be guaranteed and was therefore not part of the plea agreement. Because there was no such guarantee, the plea petition and judgment, both signed by the Petitioner, contain no provision indicating that service would be anywhere other than in the Department of Correction. At the plea hearing, the Petitioner verified to the court that he had not been promised anything other than what was in the plea offer. Although the prosecutor referenced the Petitioner's desire to remain in a county jail and that the jail administrator would "try" to assist the Petitioner, such was not a promise but merely a statement that a transfer might occur. The Petitioner has not met his burden of demonstrating either that he received ineffective assistance of counsel or that his guilty plea was unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE